**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DIAMOND RESORTS U.S. COLLECTION
DEVELOPMENT, LLC, and DIAMOND RESORTS
HAWAII COLLECTION DEVELOPMENT, LLC,

     Plaintiffs,

vs.                         Case No.: _____

PRIMO MANAGEMENT GROUP, INC. and
ISRAEL SANCHEZ, JR.,

     Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Diamond Resorts U.S. Collection Development, LLC and Diamond Resorts Hawaii Collection Development, LLC (collectively, "Diamond" or "Plaintiffs"), sue Defendants Primo Management Group, Inc. ("PMG") and Israel Sanchez, Jr. ("Sanchez") (collectively, "Defendants") for damages and injunctive relief, and, in support, state:

### I.    Introduction

1.    Plaintiffs market, sell, and finance the sale of vacation membership interests (also known as timeshare interests) in the Diamond Resorts U.S. Collection and the Diamond Resorts Hawaii Collection.

2.      Defendant PMG, which is part of the rising timeshare "exit" industry, targets and disrupts valid contracts between timeshare developers, like Diamond, and their customers through false advertising, tortious interference, and unfair and deceptive trade practices.  PMG and its CEO, Sanchez, falsely advertise and market a timeshare cancellation service which promises timeshare owners to get them out of their timeshare contracts "SAFELY. ETHICALLY. GUARANTEED. FOREVER."[1]

3.      Unsuspecting timeshare owners pay thousands of dollars in advance fees to sign up for PMG's illusory timeshare cancellation service, which they are told is "guaranteed" to release them from their timeshare obligations, be it mortgage or maintenance fees, for any or no reason whatsoever, without any investigation of whether there is a legitimate basis for any such release.

4.      What really underlies Defendants' so-called "guaranteed solution to [] timeshare troubles"[2] is institutionalized tortious interference: an instruction to timeshare owners to breach their timeshare contracts and cease making payments to timeshare developers, including Diamond, which PMG hopes will results in foreclosure or forfeiture of the timeshare interest.  When PMG's "timeshare

---

[1] https://pmanagementgroup.com/ (emphasis in the original).
[2] https://pmanagementgroup.com/about/

elimination experts" cause this breach, they knowingly subject timeshare owners to adverse and potentially ruinous credit reporting and tax liability.

5.     However, PMG spins the developer's foreclosure or forfeiture of the timeshare interest as a successful result and the promised "guaranteed" cancellation, even though—other than the tortious interference precipitating it—PMG played no role in achieving it.

6.      But this is precisely the result that timeshare owners could have achieved on their own, without having to pay PMG thousands of dollars for a falsely advertised "safe" and "ethical" exit.

7.     Far from being ethical, PMG's entire business model of achieving a timeshare "exit" is built on lies and deception, as PMG instructs its customers to lie to Diamond and conceal their relationship with the exit company.  This leaves PMG free to work behind the scenes in order to accomplish its tortious interference with Diamond's timeshare contracts.

8.     PMG operates under this veil of secrecy because it knows full well that Diamond, among other timeshare developers, does not respond to fraudulent so-called "cancellation" companies like PMG.   This is why PMG instructs their customers to never disclose their retention of PMG, so that PMG can freely ghost-write communications for the timeshare owners—concealing that PMG wrote them—to send to Diamond and other timeshare developers, requesting to be released

from their timeshare interests based on some unsubstantiated and generalized allegations of hardship or deception during the sales process, all scripted by PMG.

9.     Although PMG claims that it will "help to negotiate the release of [a] timeshare contract obligation" and "will help [timeshare owners] to get out of [their] timeshare contracts forever,"[3] PMG is not a law firm and it knows that it has no legal way of getting timeshare owners out of their valid and legally enforceable contracts. PMG also knows that it does not directly negotiate with any timeshare developer, including Diamond, as it hides behind the façade of timeshare owners' hoax correspondence.  Yet, PMG boasts that it has an "outside general counsel,"[4] thus giving a false impression to timeshare owners that an attorney will be available to them should the need arise.

10.     PMG is purposefully vague as to how exactly it achieves the purported "exits."  That is because despite its assertion that PMG provides "a high-touch, boutique level of service,"[5] PMG has no "exit" process at all, and certainly not one "guaranteed" to result in timeshare contract cancellation.

11.     Under Florida law, the "cancellation" of a timeshare contract is a specific, non-waivable rescission right held by timeshare owners that can only be exercised within a certain time period following the execution of a Timeshare

---

[3] https://pmanagementgroup.com/faq/
[4] https://pmanagementgroup.com/our-attorney/
[5] https://pmanagementgroup.com/about/

Contract.  Thus, the "cancellation" of a timeshare contract is not a service that can be advertised, sold, or provided in commerce,

12.    It is inherently false and deceptive for PMG to advertise to timeshare owners who are not within the applicable rescission period, that PMG can relieve them of all further liability pertaining to their timeshare contracts.  But that is precisely what PMG does.  To perpetuate its falsehoods, PMG spends tens of thousands of dollars on internet, television, social media, and other advertisements, which are placed into interstate commerce, to aggressively pitch its false statements and empty promises.  PMG also lures its customers by misleading advertising on its website.

13.    PMG's advertisements and marketing for its alleged timeshare cancellation "services" utilize numerous deceptive and unfair trade practices in soliciting customers and throughout the process of providing the supposed timeshare cancellation "services."    These include statements guaranteeing contract cancellation, assuring customers that no further payments on the underlying contracts will be required, promising the ease of the "exit" process and the process to repair negative credit consequences from PMG's services.

14.    PMG's owner and CEO, Sanchez, who personally benefits from PMG's operations, helps to perpetuate the falsehoods by promoting PMG's "exit" services

and promising unsuspecting timeshare owners that PMG has "a proven process" that works.[6]

15.     A key part of PMG's unfair and deceptive practices involves instructing or suggesting to timeshare owners that they should default on their valid and legally enforceable contractual obligations to Diamond, thereby intentionally causing damage and economic losses to the timeshare developer.

16.     PMG knows all along that its ghostwritten submissions will be unsuccessful and that, in the end, PMG will have to resort to tortious interference, directing the customer to breach his or her timeshare contract and stop paying without legal or factual cause, exposing the owner to the risk of foreclosure, a money judgment, credit score impairment or worse.  To accomplish its tortious interference with Diamond's contracts, PMG falsely leads its timeshare owner customers to believe that by defaulting on their obligations, timeshare owners are generating leverage with the timeshare developer.

17.     Despite its assurances that a timeshare cancellation will be obtained, PMG collects its entire exorbitant up-front fee long before the timeshare owner receives any benefit of its services, if he or she ever does.[7]  PMG justifies its fee by

---

[6] https://pmanagementgroup.com/, embedded video of Sanchez appearing on the TV show *The Balancing Act*, approximately at 3:20 mark.

[7] There are other legitimate federal and state regulated businesses that help their customers reduce or eliminate debt or repair credit damaged by excess debt, two things that PMG also promises to do. Debt relief providers, credit repair businesses

instructing the customers to stop paying legitimate and legally enforceable contractual obligations, including annual maintenance, taxes, or mortgage payments to their timeshare companies.

18.    PMG's use of false and misleading advertising and deceptive and unfair trade practices, individually and in combination, plays a material and substantial part in inducing timeshare owners to breach their existing contracts and cease doing business with Diamond.

19.    Now that the novel Coronavirus pandemic is ravaging America's health and economy, PMG's false and deceptive assurance to "exit" consumers from their timeshare ownership "safely, ethically, guaranteed and forever"[8] sounds particularly timely and appealing.  PMG is already capitalizing on the pandemic by telling timeshare owners: "Covid is keeping you from going on vacation but not from your timeshare companies charging you. **End it now, get away from your timeshare contract!**"[9]  Feeding on timeshare owners' fears, PMG doubled down on false advertising, going as far as telling consumers that despite difficult times,

---

and the like differ from PMG and other wholly unregulated timeshare cancellation businesses in many ways, but one in particular stands out: the advance fee ban. Unlike PMG, debt relief providers and credit repair organizations do not get paid until the customer actually receives the promised result.  *See, e.g.* the Florida Credit Services Organizations Act, Fla. Stat. §§ 817.7001, *et seq.,* T.C.A. § 47-18-5523 and the Credit Repair Organization Act (CROA), 15 U.S.C. §§ 1679, *et seq.*

[8] https://pmanagementgroup.com/

[9] https://www.instagram.com/primomanagementgrp/?hl=en (emphasis added).

timeshare resorts are "pursuing payment from their owners more diligently than ever" and that timeshare resorts will likely employ "underhanded methods" to hurt timeshare owners once the pandemic is over.[10]

20.     Thus, now, more than ever, it is imperative to impede PMG's deceptive practices and advertising, which will surely attract an even larger number of unsuspecting timeshare owners affected by the recent pandemic. And this Court has the power to stop PMG from continuing to prey on the vulnerable public and eroding Plaintiffs' already endangered business. Plaintiffs thus bring this action to enjoin Defendants' violations of law, and to recover the damages Defendants' misconduct has caused them.

## II.    <u>PARTIES</u>

21.     Plaintiff Diamond Resorts U.S. Collection Development, LLC is a Delaware limited liability company with its principal place of business located at 10600 West Charleston Boulevard, Las Vegas, Nevada 89135.

22.     Plaintiff Diamond Resorts Hawaii Collection Development, LLC is a Delaware limited liability company with its principal place of business located at 10600 West Charleston Boulevard, Las Vegas, Nevada 89135.

---

[10] https://pmanagementgroup.com/timeshares-coronavirus-questions-2/?fbclid=IwAR0wrFNnt7PZBY2spbAULX5G6g8MH-duQEn3OuQWp4ipl76mREzv8KL5GZM

23.     Defendant PMG is a Florida profit corporation, which is engaged in timeshare cancellation industry.  PMG operates an office and call center at 7200 Lake Ellenor Drive, Orlando, FL 32809.

24.     Defendant Sanchez is a founder and owner of PMG.  Sanchez is a resident of the State of Florida who resides in Orlando, Florida.  As described below, Sanchez has directed and personally engaged in PMG's advertising in order to facilitate the tortious scheme.  Sanchez is responsible for, and personally directs, PMG's s mode of operation wherein PMG intends to and in fact causes the breach of Diamond's timeshare contracts.

## III.   JURISDICTION

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because a federal question is presented under the Lanham Act, 15 U.S.C. § 1125(a).

26.     This Court also has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and are so related to the claim in the action within original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

27.     This Court may exercise personal jurisdiction over Defendants because they are subject to general jurisdiction in the State of Florida.  PMG is a Florida

corporation with its principal place of business in Orlando, Florida, and Sanchez is a Florida resident.

28.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## IV.     VENUE

29.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391, because Defendants reside, are located, and do business within the State of Florida, and in particular within the geographic confines of the Middle District of Florida.

## V.     GENERAL FACTUAL ALLEGATIONS

### A. Diamond Resorts

30.     Diamond Resorts International, Inc. ("DRI") is one of the largest hospitality companies in the world with more than 420 branded and affiliated resorts and over 27,000 guest beds in 35 countries and destinations throughout the continental United States and Hawaii, Canada, Mexico, the Caribbean, Europe, Asia, Australia, and Africa.  DRI and its subsidiaries develop, own, operate, and manage vacation membership resorts.

31.     Plaintiffs are indirect subsidiaries of DRI that offer multistate vacation memberships that allow members to acquire vacation ownership interests in the form

of points, which they can then use to stay at various destinations within the network assembled into various "Collections," or to book airline tickets, hotel accommodations, cruises, excursions, or other activities.  Plaintiff Diamond Resorts U.S. Collection Development, LLC has created the created the Diamond Resorts U.S. Collection (the "U.S. Collection"), which consists of nearly 50 resorts in Arizona, California, Colorado, Florida, Indiana, Missouri, Nevada, New Mexico, South Carolina, Tennessee, Virginia, and St. Maarten.  Plaintiff Diamond Resorts Hawaii Collection Development, LLC has created the Diamond Resorts Hawaii Collection (the "Hawaii Collection") which consists of resorts in Hawaii, Nevada, California, and Arizona.

32.     Plaintiffs, for example, offer an ultra-flexible points-based program for vacationing at a variety of destinations, primarily throughout the United States. Members can select from more than 40 different resorts in places like Orlando, Lake Tahoe, Sedona, Hilton Head, Las Vegas, and other destinations.  In addition, membership provides members with access to 110 resorts (through the Collections or Diamond's sister companies), and through Diamond's internal exchange program, hundreds of additional affiliated resorts and hotels, and dozens of cruise itineraries.

33.     These vacation membership interests allow the customers to use hundreds of vacation destination properties throughout the world.  A customer who purchases a timeshare interest from Plaintiffs ("Diamond Owner") executes a

Purchase and Security Agreement (the "Purchase Agreement") wherein the customer agrees, among other things, to pay a certain price for the timeshare interest.

34.    Customers who purchase vacation membership interests from the Diamond Collections generally finance those purchases over time with Diamond as both the seller and lender.  Such purchase money financing arrangements allow Diamond Owners to use their timeshare points for accommodations, air travel, cruises and the like, even though they have not fully paid for them.  The purchase money financing payments, due monthly, are the first thing PMG tells the Diamond Owner to stop paying so that the owner can, instead, pay PMG's upfront fees.  As a result, the Diamond Owners use their points for vacation accommodations without fully paying for them.  And when pursuant to PMG's instructions the timeshare owner stops making the payments, Diamond never gets fully paid for that sale.

35.    Purchasers of vacation membership points from the Diamond Collection automatically become members of the members' association for their respective Collection.  The members' associations review and approve the operating budget, assess and collect and spend annual assessments from members/owners, and pay taxes, utility costs, and other costs incurred on behalf of member/owners.  Annual maintenance fees for a given year are generally billed by or on behalf of the members' associations during the previous fall and are due by January 1st.

36.     Customers who purchase Diamond Resorts vacation membership points also become members of THE Club® at DRI ("THE Club"). THE Club has affiliations with many other resorts and hotels, which expand the portfolio of destinations at which members can stay when using their Collection points.  THE Club augments the array of accommodation options it provides to Collection members by allowing the redemption of points for airline tickets, rental cars and other travel related services.  Pursuant to the purchase agreement and governing documents, Collection members agree to pay annual fees for membership in THE Club as an attendant benefit of their timeshare interest.

37.     Diamond Owners' compliance with their contractual obligations (including timely and complete payments) are of utmost importance to Diamond's business.

38.     In addition, as with any business, customer relations are vital to Diamond's business and success.  Diamond devotes substantial resources to advertising and other marketing promotions to increase the visibility and recognition of its products and to maintain and enhance the value of its brand.

39.     Diamond competes directly with other timeshare developers and marketers of vacation and travel products/services, who, like Diamond, target similar customers, namely existing timeshare owners (including especially existing Diamond Owners) and prospective timeshare purchasers.  PMG competes with

Diamond for Diamond's own customers, promising to undo Diamond' contracts with their timeshare owners.

### B. The Defendants' Unlawful Scheme

40. Sanchez and PMG have actual, constructive, and/or specific knowledge of the contractual relationships between Diamond and Diamond Owners. The very fact that Diamond has a business relationship with Diamond Owners is the basis upon which these Defendants seek to establish a relationship with Diamond Owners. Indeed, if it were not for the existence of the contractual relationships between Diamond and Diamond Owners, these Defendants would have no reason to market their timeshare exit services to them.

41. As described above, Defendants falsely and misleadingly advertise a "guaranteed" ability to "cancel" timeshare contracts on behalf of consumers, including Diamond Owners.

42. In fact, PMG possesses no such ability, and PMG's timeshare cancellation scheme has no legitimate legal foundation. It is simply designed to induce existing Diamond Owners to breach their Purchase Agreements with, and related obligations to, Diamond in order to steer them to pay large, upfront sums to PMG for its pecuniary gain, resulting in termination of the relationship between Diamond and its owners and substantial harm to both Diamond and Diamond Owners.

43.     Sanchez, PMG's CEO and one of the co-founders of the company, originated and devised PMG's fraudulent scheme and has personally implemented or directed others to implement and execute PMG's fraudulent scheme.  Sanchez, who benefits from this scheme, directs and controls PMG's activities which are the subject of this lawsuit and/or controls others whom Sanchez has instructed to engage in such activities.   Accordingly, as used throughout this lawsuit, all actions attributable to PMG are also attributable to Sanchez, and he is equally responsible and liable to Diamond.  PMG and Sanchez may, as the context dictates, be referred to collectively as "PMG."

44.     PMG's timeshare exit scheme is implemented by luring unsuspecting Diamond Owners to hire PMG through false and misleading marketing, including claims made in television and internet advertisements, as well as on its website https://pmanagementgroup.com/ (the "PMG Website").  Defendants' advertising contains a multitude of false and misleading representations, some of which are discussed below.

45.     The PMG Website advertises "guaranteed solution" to timeshare cancellation and boldly promises timeshare owners that it will get rid of their timeshare "SAFELY. ETHICALLY. GUARANTEED. FOREVER."[11]

---

[11] https://pmanagementgroup.com/ (emphasis in the original).



46.     A copy of the false and misleading advertising contained on the PMG Website is attached as Exhibit 1 to this Complaint.

47.     Throughout its website PMG falsely states that it has a "guaranteed" way of cancelling timeshare contracts and boasts "the effectiveness of how we get people out of their timeshare."[12]   PMG misleads timeshare owners, including Diamond Owners, when it implies on the PMG Website that it has found a silver bullet for timeshare contracts cancellation by falsely stating, "We utilize our extensive knowledge and experience to find the most effective ways to cancel a timeshare specifically tailored to each client.   We get you out of your timeshare obligation forever."[13]   But PMG does not have a legally cognizable method of actually accomplishing what it promises.

---

[12] https://pmanagementgroup.com/in-the-news/
[13] https://pmanagementgroup.com/

48.    Unlike other companies in the timeshare cancellation cottage industry, PMG does not pretend to use lawyers to accomplish its "exits."  And even though PMG promises to get timeshare owners, including Diamond Owners, out of their legally valid and enforceable contracts, PMG insists that timeshare owners do not need a lawyer to get out of a timeshare.  In fact, PMG discourages timeshare owners from seeking legal advice concerning their timeshare contracts for fear that once such advice is received, timeshare owners will not fall for PMG's lies and will not buy its sham "cancellation" services.  PMG falsely implies that it has some highly specialized knowledge of how to accomplish a timeshare exit, which lawyers do not possess:

> Getting rid of a timeshare isn't an easy process, and can be very hard to navigate. Sure, you could hire a timeshare attorney who would cost three times the amount, drag you through a painful process, and provide no guarantee.[14]

49.    Despite explicitly discouraging timeshare owners, including Diamond Owners, from seeking legal advice, the PMG Website provides deceptive information about PMG's use of counsel in the timeshare cancelation scheme.  The PMG Website's Section "About Us" contains a separate page titled "Our Attorney,"[15] which misleads timeshare owners into thinking that an attorney will be available to fight for them should the timeshare cancellation process become

---

[14] https://pmanagementgroup.com/
[15] https://pmanagementgroup.com/our-attorney/

complicated and the timeshare owner has to defend a lawsuit as a result of default intentionally orchestrated by PMG.

50.     Timeshare owners' confusion is readily apparent from the reviews that the owners write for PMG on various social media platforms such as Google and Facebook.  One such customer, identified as Kathy Morrison, specifically observed in her review of PMG on Google:

> My confidence grew in Primo when I learned that they have an attorney on retainer who will take their client's case to court, if necessary. I researched the attorney and she is valid…. I researched other timeshare contract release companies, like Primo, who did not have an attorney on retainer.[16]

51.     Another customer of PMG was similarly under the impression that PMG's attorney was working on her timeshare cancellation, but at the end was left to defend a lawsuit on her own:

**Patricia Fancy-Belisle**

28th Dec 2020  Facebook                                              ★ ☆ ☆ ☆ ☆

I have been working with company for a year, and still no results on getting out of my timeshare. Instead I have to attend a court appearance regarding my lack of payment of the amount of 17k. I have requested help for a month and I have heard nothing. The question is where is the money that I am paying for you and your lawyers to help me so I didnt get into this situation. Now that I need to respond back to the court, you are all closed.

[17]

---

[16] https://www.womply.com/biz/primo-management-group-inc-orlando-FL/
[17] https://www.womply.com/biz/primo-management-group-inc-orlando-FL/

52.     Diamond Owners are purposefully deceived into believing that they are being represented by attorneys who work for PMG.  One of PMG's customers told Diamond in May 2019 that he was being represented by attorney Miriam Alequin of PMG, who is in fact not a lawyer but simply an account manager with PMG.

53.     PMG also falsely advertises that it can help timeshare owners, including Diamond Owners, to get rid of their timeshare at a whim, regardless of whether there is any factual or legal basis for doing so.  For instance, in trade publications criticizing the timeshare industry, PMG misleadingly advertises that it "can help timeshare owners eliminate a monthly debt and obligation that lasts for the contract term (most commonly 10 years) and annual maintenance fees that endure in perpetuity."[18]

54.     Similarly, the Forbes article touted by PMG falsely states that "PMG helps its customers get out of unwanted timeshare contracts they can no longer afford or wish to keep."[19]

---

[18] https://www.itravelnet.com/travel-blog/get-rid-of-your-timeshare-start-traveling-to-different-places-instead/, which can be accessed from the PMG Website's page titled "In the News" at https://pmanagementgroup.com/in-the-news/.

[19] https://www.forbes.com/sites/shephyken/2018/11/15/industry-leader-secrets-six-ways-to-stand-out-with-customer-experience/?sh=57a298805798, which can be accessed from the PMG Website's page titled "In the News" at https://pmanagementgroup.com/in-the-news/.

55.     PMG's social media profiles, such as Facebook, Instagram, and Twitter, are also replete with similar false and misleading advertisements, as they often repeat the falsehoods published on the PMG Website.[20]

56.     Upon information and belief, PMG uses other nefarious forms of false and misleading advertisements, including through its telephone sales pitches.

57.     Sanchez personally approved the false and misleading content contained on the PMG Website, as well as the content of PMG's false and misleading advertising that appears on various social media websites, to which he contributed.

58.     Sanchez, as the face of the company, also personally participates in false advertising of PMG's services.  As an example, Sanchez personally appeared on the TV show *The Balancing Act* where he falsely claimed that PMG has "a proven process" of timeshare cancellation that works.[21]

59.     Sanchez also falsely and misleadingly advertises PMG's services on various consumer websites.  One such website by the name of *Disease Called Debt*, quotes Sanchez as saying that "[f]or a small fee, we [PMG] eliminate a monthly debt

---

[20] *See* PMG's Facebook page at https://www.facebook.com/primomanagemtgroup/; PMG's Instagram at https://www.instagram.com/primomanagementgrp/?hl=en; and PMG's Twitter page at https://twitter.com/primomgroup?lang=en.

[21] https://pmanagementgroup.com/, embedded video of Sanchez appearing on the TV show *The Balancing Act*, approximately at 3:20 mark.

and obligation that continues for the contract period (most commonly 10 years) and annual maintenance fees that continue in perpetuity."[22]

60.     Such advertisements by Sanchez are false and misleading because they imply that timeshare owners, including Diamond Owners, can get rid of their timeshares regardless of whether there is any factual or legal basis for doing so. These advertisements also conceal from timeshare owners, including Diamond Owners, that PMG's method of "cancellation" involves an unlawful breach and foreclosure, which will result in serious adverse financial consequences for the timeshare.

61.     PMG and Sanchez make these advertisements knowing that, in fact, PMG will simply advise its customers to breach their contracts rather than offering them a legitimate exit method or basis to "cancel" their contracts and mortgages. PMG and Sanchez do not have any legitimate cause, justification, or privilege in procuring the breach of contractual relationships between Diamond and its customers, and their interference with Diamond's business and contracts is willful and malicious.

62.     PMG backs its false and misleading advertising by "100% money back guarantee."[23]   But PMG's much-advertised money back guarantee is not only

---

[22] https://diseasecalleddebt.com/help-get-me-out-of-my-timeshare-now/.
[23] https://pmanagementgroup.com/

misleading, but also illusory. No matter the validity and effectiveness of the "exit," PMG gets to keep the money. Despite PMG's deceptive advertisement of its services as risk-free because a customer is always entitled to a refund if PMG is unsuccessful in obtaining an exit, on information and belief, the money-back guarantee comes with numerous caveats and qualifications that allow PMG to avoid paying a refund at its discretion virtually all the time.

63.     PMG considers foreclosure by a timeshare developer or cancellation of a contract as a result of non-payment to be an "exit" in satisfaction of PMG's contract, which prevents timeshare owners from seeking a refund of their large upfront fee paid to PMG. But this is not a risk free result because this outcome, which customers could have surely achieved on their own without paying thousands of dollars to PMG, harms customers' credit ratings and creates other negative financial consequences, including lawsuits and judgments against them.

64.     But PMG manages to capitalize even on this misfortune by promising customers to help repair their credit either directly or through another credit repair organization, for which, on information and belief, PMG receives illegal kickbacks for referrals.

65.     PMG's false advertising not only promises timeshare owners 100% money back guarantee, but also assures its prospective customers that it has 100% success rate. But the two concepts are mutually exclusive because the first time

PMG returns its customer his or her money pursuant to the money-back guarantee, PMG can no longer claim that it has 100% success rate.

66.   PMG's claim of 100% success is both literally false, as well as deceptive, as PMG's method of terminating Diamond Owners' contracts through default does not result in a legal release of Diamond Owners and ultimately harms Diamond Owners' credit.

67.   Moreover, the claim of 100% success rate further promotes PMG's goal of causing Diamond Owners to immediately stop payments to Diamond, as PMG can claim to prospective customers that its service allows them to safely stop payments immediately upon signing up with PMG, since PMG's process is 100% effective.

68.   PMG misleads the owner into believing that PMG is gathering evidence to support a strategy that will allow timeshare owners, including Diamond Owners, to legally cancel or terminate their timeshare interest to justify PMG's exorbitant fees.  Instead, PMG's actual purported "guaranteed" exit strategy is simply a hoax: PMG instructs timeshare owners, including Diamond Owners, to breach their Purchase Agreements by stopping payments to the timeshare company, hoping that it will result in foreclosure actions or the exercise of other legal remedies by which the owner forfeits its timeshare interest but which could have a negative credit rating impact upon the timeshare owner, or, alternatively, could get the timeshare owner

sued—the negative consequences that PMG conceals from its customers.  Far from conducting an "ethical" exit that PMG advertises, PMG deceives timeshare companies, including Diamond, by concealing its involvement in the timeshare cancellation process.  On information and belief, PMG instructs timeshare owners not to reveal their relationship with PMG to their timeshare companies, including Diamond.

69.    PMG instructs its customers to communicate directly with the timeshare company without ever revealing that the customer is working with PMG.  Among other things, PMG directs the customers to send correspondence to the timeshare company falsely claiming hardship or accusing it of deception during the sales process, even though such conduct did not occur.

70.    When Diamond would learn by happenstance that an owner is represented by PMG and request a confirmation of such representation, PMG would sometimes respond confirming the representation and state that PMG "are consumer advocates" working on behalf of a Diamond Owner.  An example of such correspondence from PMG is attached as Exhibit 2 to the Complaint.

71.    However, it is a rare occurrence that Diamond learns about PMG's involvement because PMG shrouds its work in secrecy and does not inform Diamond that it works on behalf of a given Diamond Owner in an attempt to "cancel" a timeshare contract, as its whole timeshare "exit" model is built on deception.

72.     To keep PMG's involvement a secret, on information and belief, PMG advises and instructs Diamond Owners to lie to Diamond, thereby perjuring themselves, about their affiliation with PMG in order to qualify for and take part in the Transitions™ program, which offers timeshare owners a respectful way to relinquish all or part of their vacation ownership.  In order to qualify for the program, Diamond Owners are required to sign an affidavit stating that they are not working with a timeshare exit company.

73.     PMG's employees also use timeshare owners' information to impersonate them during phone calls to the timeshare developers, including Diamond.  This deceptive practice of impersonating timeshare owners is discussed in multiple reviews written by PMG's customers, one example of which is provided below:



**Matt Mateusz**
1st Apr 2021  Facebook                                    ★ ☆ ☆ ☆ ☆

This company is a joke. They charge you $3k+ for two phone calls. They don't provide regular communication to reassure or even update the customer. They don't uphold their end of the services they indicate in your welcome all. They simply call, claiming they are you, and bypassing the security checks and the authorized third party representation process put in place to protect consumers, using your social security information in order to simply request "deed in lieu of foreclosure" and that is it. That's all they do and they are rude and abrasive when questioning their process, indicating it is proprietary and they can't share with you. Don't get scammed by this horrific company. I will fight tooth and nail to get my money back, including going to the BBB, Bureau of Consumer Protection, and seeking legal measures until my money is refunded to me. It is a matter of principal and how poorly they treat people.

24

---

[24] https://www.womply.com/biz/primo-management-group-inc-orlando-FL/

74.     PMG's tortious scheme is thus designed to be executed through deceptive advertising followed by false promises of relief, deceptive communications with Diamond and instructions to breach their valid and enforceable timeshare obligations to Diamond.

75.     When false cries of hardship and misrepresentations—if those are even attempted by PMG—fail, PMG has no other card up its sleeve except to instruct its customers, including Diamond Owners, to stop making payments to their timeshare companies, one of which is Diamond.

76.     The sum and substance of PMG's tortious timeshare cancellation scheme, disguised as the "expert" and "guaranteed solution" to achieve freedom from timeshare obligations, has been eloquently described by one of its customers, Trey Barnes: **"*They had me pay them and stop paying the resort.*"**[25]  As Mr. Barnes further explained in his review, "The only advice they could give me [] was to stop paying, let it go to foreclosure then they would fix my credit."[26]

## C.  PMG Competes for the Diamond Owners' Payments

77.     Once a Diamond Owner enters into an agreement with PMG, the sole purpose of that agreement is to cause that Diamond Owner to withdraw his or her

---

[25]    Google review of Trey Barnes from March 15, 2020, https://www.womply.com/biz/primo-management-group-inc-orlando-FL/ (emphasis supplied).

[26]    Google review of Trey Barnes from March 15, 2020, https://www.womply.com/biz/primo-management-group-inc-orlando-FL/.

business from Diamond, effectively converting that individual from a Diamond Owner into a customer of PMG.

### D. Defendants' Actions Have Damaged Diamond

78. PMG's and Sanchez's false and misleading advertisements deceived, timeshare owners, thereby having a material effect on their decisions to purchase and/or retain Diamond's timeshares and resulting in damages to Diamond in the form of cessation of payments and defaults in attendant financial obligations due to Diamond.

79. PMG's and Sanchez's deception is material and likely to influence and, in fact, did influence the decisions of Diamond Owners who stopped making payments to Diamond based on PMG's and Sanchez's false and misleading advertising.

80. To date, PMG's and Sanchez's false advertising and hollow promises have caused Diamond Owners to retain PMG and, at PMG's express or implied instruction, to stop making payments on their promissory notes and mortgages, and/or to stop paying maintenance and other fees contractually owed to Diamond. PMG's and Sanchez's actions have directly and proximately damaged Diamond, in the form of Diamond Owners' unpaid financial obligations, for their own pecuniary benefit.

81.    All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

82.    Diamond has retained the law firms of Greenspoon Marder LLP to represent it in this action and is obligated to pay reasonable attorneys' fees and costs incurred herein.

## COUNT I

## FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. §1125(A)(1)
(against all Defendants)

83.    Diamond realleges and reincorporates the allegations contained in paragraphs 1 through 80 above as if more fully set forth herein.

84.    This is a cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

85.    Section 43(a) of the Lanham Act provides a cause of action for unfair competition through false advertising.

86.    Diamond is engaged in commerce within the control of Congress because it has cognizable commercial interests in its reputation, and falls within the zone of interest protected by 15 U.S.C. § 1125(a).

87.    PMG's "timeshare cancellation" services are offered in and its related false and misleading advertisements travel in interstate commerce.

88.     PMG and Sanchez willfully and deliberately make false or misleading advertisements on PMG's website, television, social media, and through other means, and falsely guarantee that PMG will legally relieve Diamond Owners of their timeshare obligations if PMG is retained.

89.     PMG does not offer its "service" to customers in any market other than timeshare. PMG and Sanchez purposefully inserted themselves into the same marketplace in which Diamond operates—the timeshare industry consisting of existing timeshare owners.  PMG's and Sanchez's false advertising is directed to Diamond's existing owner base, the same market to which Diamond provides its products and services and to which it markets.

90.     PMG and Sanchez falsely and misleadingly advertise to Diamond's existing owner base in order to interfere with Diamond's business and contractual relationships, to persuade them to do business with PMG instead of Diamond, and to divert monies due and owing to Diamond instead to PMG.

91.     Accordingly, PMG is in direct competition with Diamond for Diamond's timeshare owners.

92.     PMG and Sanchez made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation as described above and by, *inter alia*:

a.  producing false and misleading advertising and soliciting Diamond Owners through such advertising and other means which deceive Diamond Owners into believing that they may cancel their timeshare interest without any legal basis or reason;

b.  dishonestly inducing Diamond Owners into retaining PMG based on its advertised "guaranteed" cancellation of timeshares when PMG cannot actually fulfill the guarantee because it has no legal means of doing so or cannot fulfill the guarantee using legitimate legal methods and/or without detriment to Diamond Owners;

c.  misrepresenting that PMG has special skills and experience to have Diamond Owners' contracts cancelled when it has no such skills and experience;

d.  misrepresenting that PMG will perform a service, when it has no intention of doing so, and may instead attempt to procure a cancellation through inaction and/or foreclosure;

e.  misrepresenting that PMG has 100% success rate; and

f.  misrepresenting that PMG will procure a cancellation legitimately.

93.    PMG and Sanchez have not stopped their false advertising, which continues to evolve.  So, this enumeration is not intended to be exhaustive; other false and misleading statements are detailed above.  Additional false advertising is expected to be identified by continuing investigation and through discovery.

94.    PMG's and Sanchez's statements, outlined in part above, are not only literally false, but also misleading when considered in their full context.

95.    PMG's and Sanchez's statements guaranteeing that PMG will relieve timeshare owners, including Diamond Owners, of their timeshare obligations if they are retained are false or misleading or made in bad faith. PMG has no basis or legitimate method to exit or cancel a timeshare contract and its guarantee to do so is false.

96.    PMG's and Sanchez's false and misleading advertisement deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumer decisions to purchase and to retain Diamond timeshares and resulting in damages to Diamond in the form of cessation of payments and defaults in attendant financial obligations due to Diamond.

97.    PMG's and Sanchez's deception is material and likely to influence and, in fact, did influence the decisions of Diamond Owners who stopped making payments to Diamond based on PMG's false and misleading advertising.

98.   At all times relevant herein, Sanchez managed and controlled PMG's operations and directed PMG's marketing and advertising decisions and is personally liable for them.

99.   As outlined above, Diamond suffered an injury to its commercial interests, has lost sales in the form of cessation of payments on sales already made and defaults in the attendant owner financial obligations, and has suffered harm to its business reputation (for which Diamond does not separately seek monetary damages) as a result of PMG's and Sanchez's false and misleading advertising.

100.   PMG's and Sanchez's actions have been willful and make this case exceptional under 15 U.S.C. § 1117(a).

101.   By this action, Diamond seeks the following specific relief:

   a.   Enjoining PMG, Sanchez, and PMG's other officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them from:

      (i)   Engaging in false and misleading advertising;

      (ii)   Engaging in deceptive or unfair trade practices;

      (iii)   Advertising that PMG can cancel timeshare interests without any legal basis or reason;

      (iv)   Guaranteeing timeshare cancellation or exit;

(v)    Stating or suggesting that timeshare owners may discontinue payment of obligations associated with timeshare ownership;

(vi)   Misrepresenting that PMG has skills and experience to have timeshare contracts cancelled;

(vii)  Misrepresenting that PMG has a method or process that guarantees timeshare cancellation or exit; and

(viii) Misrepresenting that PMG will procure a timeshare contract cancellation legally and/or legitimately.

b.    Requiring PMG and Sanchez to cease broadcasting, take down, and destroy all such false, misleading, and deceptive materials;

c.    Directing PMG and Sanchez to file with this Court and serve on Diamond within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which PMG has complied with the injunction; and

d.    Requiring PMG and Sanchez to provide notice of such injunction by posting the Order on the websites used by PMG and any websites which refer to and/or link to the websites used by PMG.

e.   A judgment in favor of Diamond and against PMG and Sanchez for statutorily allowed monetary damages attributable to the stopped payments and defaulted financial obligations;

f.   A judgment in favor of Diamond and against PMG and Sanchez for treble damages (*see* 15 U.S.C.A. § 1117(a));

g.   A judgment in favor of Diamond and against PMG for the recovery of PMG's profits (*see* 15 U.S.C.A. § 1117(a)); and

h.   A judgment in favor of Diamond and against PMG for costs of suit, expenses, and attorneys' fees incurred in this action.

**WHEREFORE**, Diamond respectfully demands judgment in its favor and against PMG and Sanchez and requests temporary and permanent injunctive relief, damages, attorneys' fees and costs, and such additional and further relief as this Court deems just and proper.

## COUNT II
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq*.
(against all Defendants)

102.   Diamond realleges and reincorporates the allegations contained in paragraphs 1 through 80 above as if more fully set forth herein.

103.   This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. ("FDUTPA"), against PMG

and Sanchez, including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

104. PMG and Sanchez, by advertising, soliciting, offering, and providing their timeshare exit scheme to timeshare customers, are engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

105. Plaintiffs are "interested part[ies] or person[s]" as defined by Fla. Stat. § 501.203(6).

106. PMG and Sanchez have intentionally engaged in unfair competition, unconscionable acts and practices, and unfair and deceptive trade practices in violation of Fla. Stat. § 501.204(1) by soliciting Diamond Owners through false and misleading advertising and marketing materials.

107. At all times relevant herein, Sanchez managed and controlled PMG's operations, and directed PMG's marketing and advertising decisions and the unconscionable acts and unfair and deceptive practices committed by PMG in the conduct of its business, and is personally liable for them.

108. PMG purposefully inserts itself into the same marketplace in which Diamond operates—the timeshare industry consisting of existing timeshare owners. PMG s false advertising is directed to Diamond's existing customers.

109. PMG advertises to Diamond's existing customer base in order to persuade them to engage PMG, to dishonor their existing contracts with Diamond, and to divert monies from Diamond to PMG.

110. PMG has engaged in unconscionable, unfair, and deceptive acts or practices as set forth above and by:

a. engaging in false and misleading advertisements, including but not limited to suggesting that it has expertise regarding legitimate methods of canceling or terminating timeshare contracts, including mortgages and other related contracts when it does not;

b. instructing or suggesting that owners case making payments to Diamond, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with his or her timeshare;

c. stating or implying to Diamond Owners that there is no penalty or other legal consequence for not paying Diamond, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with his or her timeshare;

d. concealing that PMG has no legitimate methods to fulfill the promises it has made, intentionally taking no action on behalf of Diamond Owners, after entering into a contract with Diamond

Owners, or otherwise attempting to procure an exit through inaction and/or foreclosure after Diamond Owners stop paying Diamond;

e. entering into confidentiality agreements with Diamond Owners, or otherwise deliberately obscuring their role in advising Diamond Owners to stop paying or otherwise breach their timeshare or related contracts;

f. impersonating Diamond Owners;

g. representing to consumers that an express or implied purpose of the services is to improve the consumers' credit rating while failing to comply with and violating the Credit Repair Organization Act (CROA), 15 U.S.C. §§ 1679, *et seq*., and the Florida Credit Services Organizations Act, Fla. Stat. §§ 817.7001, *et seq.* by charging money before the services were fully performed;

h. representing to consumers that an express or implied purpose of the services is to provide debt management services while failing to comply with and violating the Florida Credit Counseling Services Act, Fla. Stat. §§ 817.801 *et seq.*, by charging excessive fees; and

        i.    engaging in knowingly unlawful, fraudulent, false, and deceptive practices.

111.   This enumeration is not intended to be exhaustive and additional false and misleading statements and deceptive acts and practices which Diamond will include in this claim and for which Diamond will seek relief herein are expected to be identified by continuing investigation and through discovery.

112.   PMG and Sanchez have willfully engaged in the above-described practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Diamond and Diamond Owners.

113.   PMG knew or should have known that the above conduct was unconscionable, unfair, false, and deceptive.

114.   PMG intended that the above conduct would induce another to rely and act on it, specifically, consumers such as Diamond Owners.

115.   PMG's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

116.   PMG's conduct constitutes unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of FDUTPA.

117.   As a direct and proximate result of PMG's unconscionable, unfair, false, and deceptive conduct outlined above, Diamond Owners have been harmed and Diamond has been damaged.

118.   PMG's conduct has also falsely induced Diamond Owners to stop making payments to Diamond even though they are required to do so by legally enforceable contracts.  Diamond has been damaged in the amounts due and owing to them by virtue of the Diamond Owners ceasing their payments of mortgage, maintenance, and/or tax payments at the instruction of PMG.

119.   Diamond has a clear legal right or interest in being free from PMG's unconscionable, unfair, false, and deceptive conduct described above that has harmed Diamond, and will result in future harm to Diamond if PMG is not enjoined.

120.   PMG is continuing to engage in the false, unfair, and deceptive conduct described above, and there is, therefore, a strong likelihood that Diamond will suffer irreparable harm on an ongoing basis, and any remedy at law for PMG's perpetuation of the unconscionable, false, deceptive, and unfair conduct is inadequate.  Diamond thus seeks an injunction against PMG and Sanchez to prevent this irreparable harm from continuing.

121.   An injunction serves the public purpose.

122.   By this action, Diamond seeks the following specific relief:

a.      Enjoining PMG and Sanchez and those persons in active concert or participation with them from:

(i)     engaging in false and misleading advertisements, including but not limited to suggesting that it has expertise regarding legal or otherwise legitimate methods of canceling or terminating timeshare contracts, including mortgages and other related contracts;

(ii)    instructing or suggesting that Diamond Owners stop making payments to Diamond, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with his or her timeshare;

(iii)   stating or implying to Diamond Owners there is no penalty or legal consequence for not paying Diamond, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with his or her timeshare;

(iv)    instructing Diamond Owners not to use Diamond's timeshare properties;

(v)     entering into confidentiality agreements with Diamond Owners, or otherwise deliberately obscuring their role in

advising Diamond Owners regarding attempts to limit or reduce their timeshare ownership;

(vi)    instructing Diamond Owners not to communicate with Diamond;

(vii)    impersonating Diamond Owners;

(viii)    intentionally taking no action on behalf of Diamond Owners, after entering into a contract with Diamond Owners, or otherwise attempting to procure an exit through inaction and/or foreclosure after Diamond Owners stop paying Diamond, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with his or her timeshare; and

(ix)    engaging in knowingly unlawful, fraudulent, false, and deceptive practices.

b.    Requiring PMG and Sanchez to cease broadcasting, take down, and destroy all such false, misleading, and deceptive materials;

c.    Directing PMG and Sanchez to file with this Court and serve on Diamond within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which PMG has complied with the injunction; and

d.   Requiring PMG and Sanchez to provide notice of such injunction by posting the Order on the websites used by PMG and any websites which refer to and/or link to the websites used by PMG.

e.   A judgment in favor of Diamond and against PMG and Sanchez for statutorily allowed monetary damages pursuant to Fla. Stat. § 501.211(2); and

f.   A judgment in favor of Diamond and against PMG and Sanchez for attorneys' fees and costs pursuant to Fla. Stat. §§ 501.211(2) and 501.2105.

**WHEREFORE**, Diamond respectfully demands judgment in its favor and against PMG and Sanchez, and requests temporary and permanent injunctive relief, damages, attorneys' fees and costs, and such additional and further relief as this Court deems just and proper.

<u>**COUNT III**</u>
**TORTIOUS INTERFERENCE**
(against PMG)

123.   Diamond realleges and reincorporate the allegations contained in paragraphs 1 through 80 above as if more fully set forth herein.

124.   This is a cause of action for tortious interference with contractual relationships against PMG, and is within the Court's supplemental and jurisdiction.

125.   Diamond has valid and legally enforceable contracts (the Purchase Agreements and Promissory Notes) with all Diamond Owners for their timeshare interests.

126.   PMG generally had knowledge of Diamond's relationships with the Diamond Owners.  In fact, the only reason PMG sought to establish a relationship with the Diamond Owners was because Diamond had a business and contractual relationship with the Diamond Owners.

127.   PMG sought to capitalize on Diamond's contractual relationships with the Diamond Owners.  As set forth above, PMG used false advertising and deceptive and unfair practices to solicit the Diamond Owners, to convince the Diamond Owners that they should seek to cancel their contracts with Diamond, to convince the Diamond Owners that PMG had a "legal process" to cancel the contracts, and to convince the Diamond Owners to pay PMG's fees for this supposed "guaranteed" process.

128.   PMG, knowing it could not deliver any contract cancellation, and certainly not any "legal" contract cancellation, instead sought to induce the Diamond Owners to stop paying their legally-enforceable, contractual obligations to Diamond. PMG's hope was that, if the Diamond Owners stopped paying their obligations to Diamond, they would be in default and Diamond would voluntarily cancel their contracts or foreclose on the timeshare interest that secures the indebtedness

reflected in the Diamond Owners' Promissory Notes.  That is the only (undisclosed) way PMG's supposed "guaranteed" process works.

129.   PMG induced the Diamond Owners to stop making payments to Diamond—that is, breach their contracts with Diamond—in several ways,  including but not limited to (individually and in combination), false statements, misrepresentations, affirmative statements and/or omissions in PMG's advertising, solicitation, and sales presentations; conduct; express instructions to stop making payments; suggestions to stop making payments to Diamond; and suggestions that the Diamond Owners' limited funds be used to pay PMG's fees, instead of paying their obligations to Diamond.

130.   PMG's acts and omissions, individually and in combination, were intended to convey to Diamond Owners that no reason was needed to cancel their contracts with Diamond; PMG had a "guaranteed" process to cancel the contracts; PMG was an expert in timeshare cancellation; the cancellation process was "safe," "ethical," "guaranteed"; there was no downside; and payments to Diamond were not required.

131.   Diamond Owners stopped paying Diamond as a result of PMG's actions.

132.   PMG's willful and intentional actions to induce Diamond Owners to breach their agreements with Diamond constitute intentional interference with existing contracts.

133.   PMG had no justification or privilege to interfere.

134.   PMG's actions were not in good faith, but rather were made with the knowledge and purpose to enrich itself by harming Diamond, with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from PMG's actions.

135.   As a direct and proximate result of the foregoing, Diamond suffered damages arising from unpaid and due promissory note obligations and balances for Diamond Owners.

136.   PMG is actively and continuously operating in this manner, attempting to—and in some cases succeeding in—interfering with Diamond's contracts and business relationships.  PMG's actions present an immediate threat of harm to Diamond, its customers and their relationships.  Diamond will also suffer irreparable harm from the destruction of the relationships with their customers caused by PMG's actions, for which there is no adequate remedy.  Thus, injunctive relief is warranted to enjoin PMG's actions as described herein.

137.   There would be no legitimate harm to PMG from entry of the requested injunction, as they would merely be enjoined from performing unlawful acts.  The

issuance of the requested injunction would also serve the public interest by protecting consumers from PMG's unlawful conduct and by protecting Diamond's legitimate business interests.

138.  By this action, Plaintiffs seeks the following relief:

(a) Injunctive Relief, including:

i.  Enjoining PMG and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from tortiously interfering with Diamond's contracts;

ii.  Enjoining PMG and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from engaging in any conduct or making any statement suggesting that Diamond Owners may or should stop making payments to Diamond;

iii.  Enjoining PMG and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from stating or suggesting that Diamond Owners may or should stop making payments to Diamond without establishing an attorney-client relationship with the customer, investigating the customer's factual circumstances, and explaining the potential risks of default to the customer; and

iv.  Requiring PMG to provide notice of such injunction by posting the Order on the websites it uses or controls and any websites which refer to and/or link to the websites it uses or controls.

(b) Judgment against PMG for monetary damages, consisting of:

i.  The unpaid and due promissory note obligations and balances on the Diamond Owners' accounts with Diamond;

ii.  Punitive damages; and

iii.  Costs incurred in this action.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: June 4, 2021.                          GREENSPOON MARDER LLP


By:    */s/ Richard Epstein*
Richard W. Epstein (FBN 229091)
richard.epstein@gmlaw.com
maria.salgado@gmlaw.com
Jeffrey A. Backman (FBN 662501
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
Julia Stepanova (FBN 1021185)
julia.stepanova@gmlaw.com
lajoi.thompson@gmlaw.com
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile:  954.343.6958

*Counsel for Plaintiffs*